Case No. 16-5366, Appellant v. National Archives and Records Administration. Mr. Orfanides for the appellant. Mr. Riley for the appellant. Good morning. Good morning. Paul Orfanides on behalf of Appellant Judicial Watch. I'd like to begin by going through some of the provisions in the agency's declaration that highlight our arguments and then address the public interest, unless the Court has some other preference. In summary judgment, the agency submitted a declaration, a first declaration of Ms. Murphy. That declaration asserts that there's grand jury material in the documents that we speak. And she says that the document collectively reflects names and identifying information of individuals who were subpoenaed, who were intended to be subpoenaed, reflects and quotes grand jury testimony. Now, the reason why that's important is because we know more than 30, the identity of more than 35 witnesses who appeared before the grand jury. We know the substance of some of their testimony. We know the general direction of the grand jury and the strategy they were pursuing. They were looking at at least two aspects of Mrs. Clinton's testimony to investigators. Excuse me. What bell is going off? It's on my computer. I don't know why and what it is. Oh, I'm sorry. It's all right. Can you hold up just a second? Okay. Sure. Okay. Thank you. Okay. I was saying we know the identity of more than 30 witnesses who appeared before the grand jury. We know at least some of their testimony because it was quoted in documents we identified. We know the general direction that the grand jury and prosecutors were taking. They were interested in Mrs. Clinton's statements about two aspects of her work at the Rose Law Firm in Little Rock, the first being how her firm came to be retained by Madison Guaranteed Savings and Loan, a failed savings and loan, and then the work that she did for that. So we know that was the focus of the grand jury's efforts. I don't know much more in Crow also with respect to DeLay, Congressman DeLay. It was exactly the same situation. Was it? I think there's even more information that's publicly available here. In the Crow case, at least according to the two reported decisions, all that was available was that Congressman DeLay had acknowledged that he was under investigation. There was no, you know, recitation of grand jury testimony that had been made public by this court and through another FOIA request that we had filed. So this case is actually a much, much greater. So is it your position that that difference eliminates any privacy interests that Mrs. Clinton might have here or just reduces it? Well, both. Both? How can it be both? It's got to be either one or the other. Well, certainly on the privacy interest of Mrs. Clinton, that is extremely reduced. Okay. So it doesn't eliminate it. It reduces it. Well, we don't know if it is. Well, that's what you just said. So let's assume you're right that it is reduced for some reason. Then we have to go on and find out what's the public interest and then balance them, correct? Yes, that's correct, Your Honor. Okay. With respect to that public interest, you know, we have identified. The only distinction between this case and Crewe is that more information was known about Mrs. Clinton than about Congressman DeLay. That's absolutely correct. How do we know that? It's because of this report? The independent counsel's report that we included in the record details this particular aspect of the investigation. It summarizes the evidence. It summarizes their thought process. It summarizes the charges they were seeking. So there really was a mountain of evidence available. And in addition to the report, there was a 208-page memorandum from prosecutors that were summarizing. Let me ask you a question. Why is the draft indictment in the public interest? We have at least four reasons why we believe it's in the public interest. First, the Crewe case said that it says there is a weighty interest in the public and shedding light on how prosecutors handle corruption investigations of prominent public officials. So right off the bat, this Court's precedent already says there's a weighty interest. Or a draft indictment? Well, with respect to the draft indictment in particular, we think there's a ---- Was that involved in the Crewe case? No, that was not involved in the Crewe case. Yes. So doesn't a draft indictment raise separate concerns? I don't think it raises separate concerns. I do think there still is a public interest in shedding light on what the prosecutors were doing and showing ---- So if I'm a U.S. attorney and I ask a brand-new lawyer hired out of law school, after a long investigation into a public figure, you know, I'm not sure how this would look. Give me a draft indictment so I can consider this. And I subsequently decide not to prosecute. Are you saying there's a public interest in that draft indictment? I think there certainly is a public interest in seeing a number of things about that draft indictment, the first being how close it was to a finished product. Was this something that was polished and final, it was ready to go, and it was pulled back the last minute because the subject of it was the president's wife and a high-level presidential advisor? Or was it some more random thoughts that weren't really complete and it was forgotten and left on a computer or a shelf somewhere? So there's a public interest in knowing how far, in terms of the operation of the special prosecutors in this instance, there's a public interest in knowing how far, how close they were or how not close they were to issuing that indictment. There's also a public interest in comparing the draft indictment to the report that was issued to see if there's a difference in focus or emphasis. All right. I see your argument on the public interest. Now, what about the privacy? I find it hard to imagine a case. We're not supposed to be too categorical, but I find it very hard to imagine a case in which a draft indictment that was not filed doesn't have an unwanted invasion of the privacy of the individual who's the target. It seems so grotesquely unfair. Well, this is not a normal case, Your Honor. This is a case in which a mountain of material that prosecutors were already looking at has been made available. So the question becomes, in our view... I'm not talking about the content of material available. A draft indictment is a proposed government position as to why the behavior of this individual was illegal. That's right. Now, fundamental is a sense that we do not accuse people of illegality without a formal indictment. In this case, Your Honor, we already know that the public – that the special prosecutors found Mrs. Clinton's statements to be factually insubstantiated or factually inaccurate. They found them to be false. The question was, we know this. We know this from the reports and from the memo that we included in the document. Well, yes, that's absolutely true. In this case... That's absolutely true, but the prosecutor decided not to file an indictment. The question in this case is what privacy interest remains, and the government has not answered that at all. Well, the government may not have answered in its brief, but just to pick on what Judge Silverman was saying, I mean, this Court has spoken pretty regularly about the very issue he raised. I mean, in fund for constitutional government, we said the release of this type of information, that is a draft indictment, represents a severe intrusion on the privacy interests of the persons in question and should yield only on exceptional circumstances. I mean, we've said things like that again and again, and it seems to me that that clearly must apply to a draft indictment. So if you apply this case to this case, you have to identify, you have to identify, quote, an exceptional interest that meritates in favor of disclosure. So what would that be here? I think this case has never... You agree that's the standard, correct? You accept that. That's our precedent that I just read to you. It's a balancing, Your Honor. And in this instance... It's the what? This case has... No, no, no. Excuse me. Let me just finish my question. This was balancing. That's what it was doing here. And the court was saying that with respect to a document like a draft indictment, it's, as Judge Silverman said, highly unlikely that this court would order it released under FOIA. And so in this instance, I'm asking you to identify a last quote, exceptional interests meritate in favor of disclosure, quote. So what's the exceptional interest here? I think there is exceptional interest in how the special prosecutors were handling the... But that's true in every case. You can always say that. Not every case... That doesn't distinguish this case from anything else. Judge Silverman, not every case involves the life of the president and is a high-level presidential advisor. And not every case is a mountain of grand jury material and prosecutors' descriptions of their activities without process. So is there a separate... Are you proposing sort of a separate rule for candidates for the presidency and their spouses? No, what I'm saying is... I mean, you know, look, Congressman Barrett was a powerful member of the Congress. He was. He was not the First Lady. He did not go on to become Secretary of State. He was not a lady. We'll stipulate that. He was not married to the chief executive. Why don't we just leave it at that? So if we have to write an opinion, how do we draw that line? I think the focus has to be on the privacy. This is ultimately a balancing test. All right, let me talk about privacy. The target here, Hillary Clinton, is it your view because she is a major public figure, she has less of a privacy interest? I think it is. She has a diminished public interest as a privacy, as a public figure. No, no, no, not public interest, privacy interest. We're talking about her privacy interest. Right. I believe she has a diminished privacy interest because she is a public figure. But, you know, actually I'm not sure that is correct. A draft indictment would be on the Internet in 36 seconds. And most people would see that as a formal government, many people would see that as a formal government accusation of illegality. And that seems very troubling since it was not filed. It was not accepted. That's right. Your prosecutor said no. The special prosecutor's report is already on the Internet. It's been on the Internet for some 15 years. So the special prosecutor determined not to seek an indictment, right? Yes. So isn't it terribly unfair to distribute publicly a draft indictment when it wasn't filed? No, I don't believe it is terribly unfair, especially when government report or the prosecutor's report has already been available. I mean, it's been publicly available. You could buy it in bookstores. The report is anything. An accusation of illegality formally by the government is something entirely different. But it's a draft indictment. It's not an accusation of illegality. And the report actually says they decided not to prosecute. So that makes clear. So if we're talking about privacy and there's a mountain of information out there that is already what is contained within the draft indictment, what privacy remains? And that is a question the government has never answered. And what the court has charged with here is doing a balancing test. It's funny you say the government didn't answer it. It seems quite apparent to me. And I've deduced it from the government. I can't. I think the government's position is a draft indictment would always be an invasion of privacy. Now, I know we can't be too categorical, but I find it hard to imagine a case in which a draft indictment would be disposable. Well, this Court has not applied categorical claims of withholding. And usually the analysis in that context is whether or not there is some sort of individual analysis is not of any significance. And in this instance, that individual analysis is exactly what differentiates this case from any other case that I've found that this Court has decided. This Court has never decided whether a privacy interest remains in a figure who is the subject of a special prosecutor's report that's been published to the world with the Court's permission. I mean, this Court authorized the approval of that report. It had oversight responsibility. And it could have if it wanted at that time back in 2001, I believe it was. Was it this Court or the special panel? I thought it was this Court. But perhaps it was the special panel. The special panel. It was the special division, wasn't it? Special division of this Court. Okay. It was the special division. But that Court had the opportunity. It was charged in its statute with taking action to protect the privacy of the people who were referenced in the report. And it decided not to do that. So what is your response to Judge Silverman's earlier question about the draft indictment as being viewed as a formal accusation by the government as not being grossly unfair? I think it's not a formal accusation. It's a draft. I understand it wasn't filed. Right. But everything has been released except the draft indictments that you're seeking. And what is a draft indictment? And Judge Silverman's question put it to you that it is viewed as a formal charge. It's what the government was thinking of charging. Yes. We know those. We know that. We know it was thinking of charging Mrs. Clinton for perjury, false statement, obstruction of justice. What you get at is you have the report, you have the evidence, you can make your own judgments. And so can the public. So getting the draft indictment adds what? You can make all the conclusions you want to about how the independent counsel conducted the investigation and argue he should or should not have indicted. But what does the draft indictment itself give you other than a formal charge by the government? It's the weighty interest that the crim court said the public has in shedding light on what the prosecutors, how the prosecutors handled this prosecution. And as I was saying, if the document is close to being final, then it was pulled back. If the prosecutors decided to pull their punches. What I'm trying to get you to focus on is Judge Silverman's earlier question as to why isn't it grossly unfair. I mean, this happens in all these criminal cases. The government presents cases and then it may decide not to indict. Yet your argument is the draft indictment should be released. I think to say draft indictments can never be released because the privacy interests are always going to be outweighed by the public interest is creating a new form of exception. And so this is a balancing test. I'm trying to understand. You have admitted that there is a diminished privacy interest here. That's your position. That's the crew case as well, says there's a diminishing. You don't have to argue with me. I mean, that's what you told Judge Silverman. Sure. That is your position. Yes. All right. So then the question is, what is the information you want? And we're trying to identify it. And I thought that's what Judge Silverman's question was doing, and I didn't hear your answer. I thought I answered that question earlier, and that was that we had at least four. First, when we talked about the weighty interest. But more specifically, this particular draft indictment, we're interested in seeing how final of a product it was.  It is already public that you know the number of pages of some of these drafts, and you know there were drafts. I don't know if the number of pages identifies how complete the draft was. I mean, you could have a long outline with lots of blanks and empty spaces, but the point is we are interested in seeing how close the government was. Did it have a complete draft indictment that was polished and final and ready to go, but they pulled their punches because it was the President's wife? Or is this something that was incomplete? It was something that was forgotten and put on a shelf? You know, someone started drafting some initial thoughts. I have lots of draft complaints on my computer dating back for 10 years, Your Honor. And, you know, some have never been filed, some are completely incomplete. All right. Why don't we hear from the other party? Very good. Good morning. Nicholas Riley for the government. It sounds like the Court has a good understanding, a good grasp of the issues in this case. I'm not going to answer any specific questions. I'd just like to briefly respond just on this question on under 7C about the balancing test. Fairbash, the Supreme Court's decision on the exemption 7C involved a high-level, the privacy interest of a high-level White House official, and it applied the same test. So I just want to make clear that there is no exception here because of the fact that Mrs. Clinton was married to the Chief Executive or was herself a senior advisor. The other important point I think that Fairbash made was that when public interest alleged is an interest in learning how the government performed its investigation or allegations of government misconduct, the burden is on the requester to do more than simply make an allegation, but rather have to present meaningful evidence to support that allegation because allegations of misconduct are easy to assert. So those are just the two points I wanted to highlight from Fairbash. If the Court has other questions. Yeah, I noticed, I have two questions. I noticed, at least I think I noticed, you know, that the federal district courts view that there's no public interest because the Office of Independent Counsel no longer exists, right? That's right. That's exactly right. We don't share that view. I think that. Well, I didn't hear Judge Tatel's question. So would you repeat it? The question I had. Can I have it now? Yeah, better. The question I had. This was a horrible courtroom. It's really difficult for us to hear each other. I agree. The question I asked was whether or not, I observed that the government is not defending the district court's view that there's no public interest here because the Office of Independent Counsel no longer exists. And the government doesn't defend that. So your argument, are you saying there is no public interest or that it's just outweighed by the privacy interest? The latter. We're saying there is a public interest, but it's outweighed by the privacy interest. And that leads to my second question, which is, the district court never got to the balancing, right? But we can do that, can't we? We don't have to send this back. Judge, if we think, unlike the district court, that there is a privacy interest, I'm sorry, a public interest that has to be weighed against Mrs. Clinton's interest in privacy, we don't have to remand, do we? We can do that ourselves. I think that's absolutely right. Because there is strictly a question of law. Yeah, that's exactly right. And I would note, in performing that balancing, I think it is relevant. All the points that Judicial Watch raises under their 6-year argument about, you know, the fact that there's an independent counsel report that's already out there, the fact that there's been a disclosure of this redacted evidence memo, all those things I think reduce the public interest in finding out specifically what's in these drafts. But I think, to your question specifically, I think absolutely this Court could conduct that balancing. Suppose, to take Petitioner Appellant's argument to the slight ramification, suppose there was a showing that the independent counsel had been bribed at the last moment not to file the indictment. Would the case be different? I don't know. I think it would. It wouldn't obviously depend on the nature of that evidence. But, you know, more directly, I think you'd have to find, the Court of Fables is very clear, that there has to be a nexus between the disclosure of the specific information sought and the allegation or evidence of government misconduct. So there'd have to be some showing that the contents of the draft indictments, not just, you know, the fact that they exist or their length or those kinds of things, but the actual contents themselves would somehow cast light on the evidence of bribery or the allegation of bribery. I think that's a good answer. Do you accord with my view that a draft indictment, it's hard to imagine a case other than the circumstances I just described in which a draft indictment would be disclosable without crushing the privacy interest? Absolutely. I think it would be difficult to imagine a case where drafts of an indictment would be, especially in a case where the indictment was never actually filed, would the balancing would come out under 7C in favor of disclosure. I think it's also difficult to imagine a case where Rule 6U wouldn't apply for the other reasons. Yes, of course. Or Section 3. I'm sorry? Or Section 3. Exemption 3. Yeah, exactly. That's exactly right. I think it's difficult to imagine either of those cases. But to be clear, we're not actually asking for a categorical ruling here. But I think you're right. It would be very difficult to imagine the scenario where that would be disclosable. If we said it was difficult to imagine, would that be a categorical rule? I think it would be a categorical rule, but it wouldn't be a categorical rule. But it wouldn't be a categorical rule, but it would be a statement of a coming close. I think that's right. But, you know, for the very reasons you have identified, I think it would be appropriate. But we've already we already have a pretty clear precedent on what the standard is, right? That's fun for constitutional rights. You agree. That's the case, right? And that says there is no per se rule. But I'm looking for the rule here. But in order to justify the release of something like a draft indictment, there have to be exceptional interests. That's our standard. Absolutely. Exceptional interests. That's exactly. So can you think of a situation? Judge Sullivan mentioned evidence of bribery. Can you think of a situation under which exceptional circumstances would exist to release a draft indictment? I mean, it's very difficult to imagine a scenario that would both where both would have exceptional public interest in the disclosure of indictment that would satisfy the defendant. So would it make a difference if this case had come up if they were hearing this case last October, a month before the election? I'm not sure. Would you hold the argument, though, that, you know, this is a candidate for the presidency? Well, I don't think that may be a factor in the balancing. I don't think it would change the outcome here. And I would note that the district court issued its decision in October of 2016, really at the peak of. Well, we're deciding it now. I just, you know, we can't. Our case law already says there's no per se rule. And there has to. But we're not going to order these released unless there's exceptional circumstances. So we have to be careful. We have to be faithful to that. In other words, we can't write something that says this will never happen, right? Because we've already said that can be released in exceptional circumstances. That's exactly right. If you could help me think of a case where these circumstances would be exceptional. That would help me a lot. Well, just to piggyback on one point, I thought the district court and a previous district court and our court had taken into account the fact that the indicting entity was no longer in existence. So the likelihood that these drafts and future drafts might lead to some formal action was so remote that just sort of public curiosity wasn't enough. That's right. That was. And I think as Judge Tittle pointed out earlier, we're not even relying on the fact that the independent counsel's office no longer exists. But I thought just in terms of trying to think of exceptional circumstances, if you had an ongoing office that's active, et cetera, it might be different. I think that's exactly right. If there was, you know, the potential for the disclosure to lead to some, you know, consequences in the future to affect an ongoing investigation, that would certainly be closer. But to be clear, you know, in this case we're talking about drafts of indictments that, you know, again the contents of which have never been disclosed and which, you know, represent an invasion of privacy that this court has recognized as severe or kind of the peak privacy interest that this court has recognized because this is a case where there was not only was the individual never convicted, there was never even an indictment filed. So I don't think we're approaching that line just yet. I'm happy to answer any further questions either on Exemption 7C or on Exemption 3 and Rule 6E. If the Court has any. If not, we're happy to rest on the briefs. I don't have any more questions. Thank you. Thank you.  Counsel for Appellant? A few quick court points here, Your Honor. First, this is not a fabish case. We did not allege misconduct on the part of the prosecutors. So cruel applies. Cruel recognizes that, you know, the fabish line of cases where there's a request to or is alleging some sort of government misconduct on the part of the prosecutors has to make some additional showing. That doesn't apply here. I have to take issue with this exceptional interest notion that somehow regardless of how much whatever, that the exceptional interest weighs only on the public interest side of the balancing scale. I think the exceptional interest in this case or the exceptional circumstances in this case is the mountain of information that has already been made public. That's what makes this case different from Fund for Constitutional Government. There was no report. There was no 208-page memorandum detailing the evidence available. But doesn't that reduce the public interest if a vast amount of information has already been released in terms of balancing? I mean, maybe it adjusts it somewhat, but I still think without some demonstration of privacy that remains. I mean, we know so much about what this prosecution was doing. We know how much money Mrs. Clinton was making at the Rose Law Firm in the three years that were in question. That fits in with this theory that somehow she needed to be retained by the Rose Law Firm because she needed more income. But your public interest argument is you want to know how the independent counsel office was operating, and you say you're not making any accusation of misconduct by that office. So you have all this information, just overwhelming number of pages of information about what that office was doing, including that there were drafts, including that it decided not to indict with an explanation as to why it decided not to indict. Yes. And that's why I'm trying to focus on this precise document or documents that you want. Well, the record is not complete of what the prosecutors did. Everything is not out there. We do know that this draft indictment exists. We were discussing what the exceptions might be in order to be consistent with the notion it's not a categorical rule. So one suggested during a question was bribery. Another might be there's an ongoing investigation. What's your line? What I'm saying is exceptional isn't limited to just one side of the scale. What is your line? Our line is exceptional applies to both the extremely diminished privacy interests. So you're entitled to get the whole report regardless of … Oh, we never said we would be entitled to the entire report. We've always acknowledged that if there is some truly private information in these reports from grand jury information, that that could be redacted on a line-by-line basis. But that's not what they've done here. They're withholding everything from the caption to the page numbers. Now, that's not to say we have a public interest in the page numbers, but that does highlight the fact that they are withholding everything from us. And the notion that there is not one single line or, you know, paragraph that can be disclosed here because it's vital to protect Mrs. Clinton's privacy in light of the mountain of information that's already out there, that's just fundamentally wrong. So in looking at exceptional circumstances or the exceptional language, the language about exceptional interests, that issue in Fund for Constitutional Government, I would urge the Court to apply that to both sides of the balancing scale because the Court in Fundamental Constitutional did not say that it applies only to the private interest. It would be a balance to the rest. Okay. Let's talk – let's sound the light about that. So then I like then to think that the way you would apply that in this case is you would say there are exceptional circumstances here because on the privacy side, so much is known that her privacy interest is reduced, right? Yes. And how do you articulate it on the other side? Well, for all the articulations of the public interest that I've already gone through, which is, you know, starting with the crew, weighting interests in how special prosecutors are handling these prosecutions of high-level law or investigations of high-level criminal public officials. Okay. But let me talk about that. I mean, I think the district court's view that there is no public interest because the Office of Independent Counsel no longer exists doesn't seem right to me. But it does seem to me at least relevant that that statute is gone. So maybe the public interest in knowing about that is likewise diminished because the Office of Independent Counsel and the Independent Counsel statute no longer exists. Well, special prosecutors, the question of special prosecutors, the wisdom of retaining them highly should probably function. That issue is more timely now than ever. But you would concede that the interest in knowing how it worked would be significantly greater if it still existed, correct? I don't see a material difference. I mean, we have a special prosecutor today. He's acting pursuant to regulations established by the Department of Justice. That raises a very interesting question, which I'm puzzled about. How much public interest is there in history? It's not clear to me that something that's so dramatic 25, 30 years ago doesn't have a strong public interest as a matter of history. So I'm not clear about that, whether public interest is relevant only if something is present circumstances. I'd hesitate to ever say that there's no public interest in history, Your Honor. I mean, I think the public interest is not diminished. And it does not diminish in part because the actors involved in that situation are still around. They're giving book tours all around the country and people are lining up to see her. So there is always going to be a public interest, especially insofar as there's a public interest. You know, my view of the privacy interest here is very powerful. But insofar as a public interest, I'm not sure that it wouldn't be just as relevant 50 years from now because of the historical significance. But it's a puzzling question because in our cases, whether or not the public interest is an indication of how the government is operating. And sometimes the time between an event and the present is relevant. I'm not sure in this case it would be. Well, in this instance, Your Honor, we've seen multiple special prosecutors since OIC disbanded. And, you know, there have always been a source of controversy and a source of tremendous public interest. There's a public interest if there never was another. That's true, too. Even if the Supreme Court had held or were to hold reexamining Morrison v. Olson, that Silberman was right. All right. History. History. History. History. History. Yes. History took care of that. Very good. Thank you. Thank you, Your Honor.
judges: Rogers, Tatel, Silberman